**STATE of Tennessee, Appellee,**

v.

**Edward BARKER; Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

July 27, 1982.

Permission to Appeal Denied by Supreme Court Nov. 1, 1982.

Kenneth J. Ries, Asst. Public Defender, Walter C. Kurtz, Public Defender, Nashville, for appellant.

William M. Leech, Jr., Atty. Gen., Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Sterling P. Gray, Jr., Asst. Dist. Atty. Gen., Mary Rubin, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

TATUM, Judge.

The defendant, Edward Barker, was convicted of the following offenses with punishment as indicated: second degree burglary with intent to commit rape, not less nor more than 6 years; armed robbery, 15 years; aggravated rape, life; second degree burglary with intent to commit larceny, not less than 6 nor more than 6 years. The trial court ordered that the penitentiary sentences imposed by the jury be served consecutively. On this appeal, the defendant has assigned several issues on various grounds. After reviewing the record, we have concluded that the judgments must be affirmed.

The defendant attacks the sufficiency of the evidence only with respect to the conviction finding him guilty of second degree burglary with the intent to commit rape. The crimes were committed on November 3, 1980 between 11:00 A.M. and Noon. The rape victim, Mrs. Cornelia Johnson, and her family lived in an upstairs apartment of a house. The Bobby Warner family occupied the downstairs apartment. There was a stairway inside the house leading from the downstairs apartment to the upstairs apartment.

On November 3, 1980, Mrs. Johnson did not go to work because of illness. She was lying in bed when she heard glass break twice. She looked out a window and saw a strange automobile in the driveway, occupied by a man. Immediately, the door to her apartment was "bursted in" and the defendant entered with a pistol. The defendant pointed the gun at Mrs. Johnson's head and threatened to kill her. He took her jewelry and then ransacked closets in her apartment. He then ordered her to accompany him downstairs to the Warner apartment, which he ransacked. The defendant then directed Mrs. Johnson to accompany him back to her apartment where he looked through two closets. He discov-

ered a purse in the dining room, which he emptied.

The defendant then ordered Mrs. Johnson to a bedroom and forced her to lie on the bed. The defendant penetrated Mrs. Johnson's vagina with his penis. After raping Mrs. Johnson, he ordered her to accompany him back to the Warner apartment. He ordered her to sit on a couch and she remained there until she heard other glass breaking. After she was satisfied that the defendant had departed, she ran upstairs and telephoned the police and the father of Bobby Warner.

Several items were taken in both apartments, including stereo equipment from the Warner apartment. A fingerprint of the defendant was found by police in the Warner apartment. The evidence is overwhelming and undisputed that an intruder broke into both apartments and property was taken from both apartments. It is undisputed that the intruder robbed Mrs. Johnson at gunpoint and raped her. The only issue of fact was whether the defendant was the intruder. He and his witnesses testified that he was with his live-in girlfriend when the crime occurred. The evidence introduced by the State that the defendant was the intruder is clear and convincing.

■ The indictment charges in the first count that the defendant broke and entered into the dwelling of Mrs. Johnson with intent to commit rape. The defendant alleges that the evidence does not support a finding that he entered Mrs. Johnson's apartment with intent to commit rape, he asserts that all of the evidence indicates an intent to commit larceny. He cites *Charles Billy Thomas v. State,* an unreported opinion of this court, written by the writer of

this opinion, and filed at Jackson on January 24, 1980.[1] In that case, convictions for assault with intent to commit second degree murder were reversed on the ground that all of the evidence indicated that the assault was made to commit criminal sexual acts and not murder. The sexual acts were consummated but no act in furtherance of a murder intent was committed. We observed in the *Thomas* case that "one might entertain, at the time of the assault, an intent to commit both murder and rape; in which event, he might be prosecuted for either offense. *Curry v. State,* 154 Tenn. 95, 290 S.W. 25, 26 (1926)." The same rationale is applicable with respect to burglary. One's actions are circumstantial evidence of his intent. *Poag v. State,* 567 S.W.2d 775 (Tenn.Cr.App.1978). Here, the defendant consummated both acts of aggravated rape and armed robbery. We find sufficient evidence upon which a rational trier of fact could be convinced beyond a reasonable doubt of the defendant's guilt of all four offenses, including second degree burglary with intent to commit rape.

■ The defendant makes two issues concerning the admission into evidence that he had three prior burglary convictions. At a jury-out hearing, before the defendant began offering his evidence, the trial judge held that the three prior burglaries for which he had been convicted involved dishonesty and therefore, it was not necessary to determine whether the probative value of this evidence for impeachment purposes outweighed its prejudicial effect.[2]

The State did not question the defendant on cross examination concerning his prior burglary convictions. The evidence was elicited from the defendant by defense counsel at the beginning of direct examination. Therefore, the defendant cannot be

1. The Tennessee Supreme Court granted review of this court's opinion in the *Thomas* case. See *State v. Thomas,* 619 S.W.2d 513 (Tenn. 1981). The court considered other aspects of the *Thomas* case, but expressly affirmed this court's opinion with respect to the matters herein discussed. 619 S.W.2d at Page 515.

2. We glean from the record that the documentary evidence of the convictions may have been

before the trial judge although it was not made an exhibit, so we cannot independently determine what felonies the defendant intended when he committed the three prior burglaries. It appears that the trial judge found that the evidence of the commissions was admissible "on the face of them" because "breaking and entering with the intent to commit robbery involves dishonesty."

heard to complain and the two issues relating to this evidence must be overruled. See *Dukes v. State,* 578 S.W.2d 659 (Tenn.Cr. App.1978); *Armstrong v. State,* 548 S.W.2d 334 (Tenn.Cr.App.1977); *Mallicoat v. State,* 539 S.W.2d 54 (Tenn.Cr.App.1976).

The defendant complains that the trial judge did not instruct the jury on aggravated sexual battery as a lesser included offense to aggravated rape and did not instruct the jury on aggravated assault as a lesser included offense of armed robbery. For the reasons hereinafter discussed, we pretermit the question of whether aggravated assault is a lesser included offense of armed robbery.

T.C.A. § 40–2518 requires trial judges to "charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so." T.C.A. § 39–3710(c) contains an identical provision, though termed differently, applicable to The Sexual Offense Law of 1979.

The Tennessee Supreme Court does not approve the practice of charging a lesser included offense when there is no evidence to support it. *State v. Mellons,* 557 S.W.2d 497 (Tenn.1977); *Whitwell v. State,* 520 S.W.2d 338 (Tenn.1975). When there is no evidence to support a lesser included offense so that the accused can be guilty only of the greater offense or no offense at all, it is not error to refuse to instruct the lesser included offenses. Where the State's evidence establishes that the crime specified in the indictment was committed and the defendant seeks only to establish an alibi, leaving the State's evidence as to the degree of crime uncontradicted, no instructions on lesser included offenses are required. *Price v. State,* 589 S.W.2d 929 (Tenn.Cr.App.1979); *Judge v. State,* 539 S.W.2d 340 (Tenn.Cr.App.1976).

Here, the State's evidence clearly established the commission of the offenses of aggravated rape and armed robbery; there was no evidence of a lesser included offense. The only issue was created by the defendant's alibi evidence which the jury rejected. There was no evidence upon which the jury could find the defendant guilty of a lesser included offense. We find no error in this regard.

The defendant also states that the court erred in instructing the jury that the lesser included offense of rape was punishable by an indeterminate rather than a determinate sentence. The trial court properly defined the offense of rape for the jury but erroneously charged that the offense was punishable by an indeterminate sentence. See T.C.A. § 39–3705(b). Since the error involved only the question of punishment for rape and the jury found the defendant guilty of the greater offense of aggravated rape, then this issue is moot and the error is harmless beyond any doubt. Rule 36(b), T.R.A.P. *Graham v. State,* 218 Tenn. 453, 404 S.W.2d 475 (1976); *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826 (Tenn.1911).

The defendant complains that the trial court committed error in refusing his special request taken from *United States v. Telfaire,* 469 F.2d 552 (D.C.Cir.1972). The defendant states that the *Telfaire* charge was that requested in *Sloan v. State,* 584 S.W.2d 461 (Tenn.Cr.App.1978) and states that since the *Sloan* court held that the refusal of the charge was harmless error, Tennessee requires the "Telfaire" charge. The *Sloan* decision merely held that an unspecified error was committed and that the special request would have cured it. The *Sloan* court did not adopt a rule requiring the "Telfaire" charge. In the instant case, the trial judge in his main charge, made it clear that the State must prove identity beyond a reasonable doubt. We adhere to the holding of this court in *Holt v. State,* 591 S.W.2d 785 (Tenn.Cr.App.1979) that "Tennessee does not require the 'Telfaire charge.'"

The defendant next complains that the trial court erred in denying his motion to suppress the victim's lineup identification testimony. He argues that the evidence was inadmissible because he was not represented by counsel at the lineup.

On November 8, 1980, the defendant was arrested on unrelated charges. The victim identified the defendant as her assailant in a lineup conducted on Sunday, November 9, 1980. Prior to holding the lineup, police officers attempted to comply with the defendant's request by contacting Attorney Thomas Brothers, who had represented the defendant on previous unrelated charges. Being unable to contact Mr. Brothers, an Assistant Public Defender was summoned, but the defendant declined his services. After the victim identified the defendant as her assailant, an arrest warrant was issued charging him with the instant offenses.

Because the lineup was held while this case was still in its investigatory stage and before the beginning of the adversary stage of the instant proceeding, he was not constitutionally entitled to counsel at the lineup. *State v. Mitchell,* 593 S.W.2d 280 (Tenn.1980); *State v. Richard Cable,* Carter Criminal, C.C.A. 46, Opinion released March 4, 1982 at Knoxville (as yet unpublished).

The defendant makes further issue that the trial court erred in instructing the jury on the crimes of grand and petit larceny as lesser included offenses of second degree burglary. We agree that larceny is not a lesser included offense of burglary with intent to commit larceny. *State v. Davis,* 613 S.W.2d 218, 220–221 (Tenn.1981). However, the defendant was not convicted of larceny and the charge was harmless. *Graham v. State,* 404 S.W.2d 475 (Tenn. 1966); *Cooper v. State,* 128 Tenn. 37, 138 S.W. 826 (Tenn.1911). This issue is without merit.

The defendant next insists that the trial court erred in ordering consecutive sentences. The defendant was convicted of 3 separate offenses of second degree burglary on December 9, 1980. The defendant's age when the burglaries were committed is not shown by the record [3] but since he was 19 years of age on July 22, 1981, he had to be at least 18 years of age at the time of his prior convictions.

The trial judge found the defendant to be a multiple offender, persistent offender, and a dangerous offender, as defined in *Gray v. State,* 538 S.W.2d 391 (Tenn.1976). In addition to the four serious felony convictions in this case, the defendant had three previous convictions for second degree burglary. Whether or not the defendant was 18 years of age when the three previous burglaries were committed, we have no hesitancy in saying that the defendant has a record of extensive criminal activity and is a "multiple offender" as defined in the *Gray* case.

We also hold that the burden is upon the State to show that a defendant has such convictions as would qualify him as a "persistent offender." However, the burden is upon the defendant to establish that he was under 18 years of age when offenses were committed for which he was convicted in an adult criminal court. See, generally, *Terrell v. State,* 210 Tenn. 632, 361 S.W.2d 489 (1962); *Knowling v. State,* 176 Tenn. 56, 138 S.W.2d 416 (1940). In the absence of any proof that he was under 18 years of age when the three prior burglaries were committed, we affirm the holding of the trial judge that the defendant was a "persistent offender" as well as a "multiple offender," by the *Gray* criteria. We pretermit the issue of whether the defendant is a "dangerous offender."

All issues presented are overruled and the judgments below are affirmed.

BYERS, J., and WILLIAM S. RUSSELL, Special Judge, concur.

---

**3.** The defendant's age when prior offenses were committed is material in determining whether one is a "persistent offender," but not in determining whether one is a "multiple offender." *Gray v. State, supra.*